IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CATHERINE GRAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:23-cv-01069-RNC ) |
| MINNESOTA MINING AND MANUFACTURING COMPANY A/K/A 3M COMPANY, | ) ) October 11, 2023 ) ) |
| Defendant. | |

**AMENDED COMPLAINT**

NATURE OF THE CASE

This is an employment actin brought by the plaintiff against the defendant pursuant to multiple Connecticut General Statutes § 46a-60 alleging discrimination on the basis of sex, race, and color, as well as sexual harassment, and retaliation.

PARTIES

1.  The Plaintiff in this matter, Catherine Gray ("Plaintiff"), was at all times relevant to this Action a resident of the City of Manchester in the State of Connecticut.

2.  The Defendant, Minnesota Mining and Manufacturing Company aka 3M Company ("Defendant"), is a foreign corporation organized under the laws of the State of Delaware with a business address of 3M Center, St. Paul, MN 55144-1000.

3.  Defendant operates a location at 32 River Road, Stafford Springs, CT 06076.

JURISDICTION & VENUE

4.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship among the parties and the amount in exceeds $75,000.

5. Venue is in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

6. Plaintiff filed a timely administrative complaint against Defendant with the Connecticut Commission on Human Rights and Opportunities, and thereafter received a release of jurisdiction letter therefrom, a copy of which is appended hereto as Exhibit 1. This Action is brought within 90 days of receipt of said release of jurisdiction letter. As such, Plaintiff has exhausted all administrative remedies, and this Action is timely.

7. Plaintiff commenced employment with Defendant in or about late July or early August of 2021 at the aforementioned Stafford Springs location, in the position of Line Processor.

8. Plaintiff performed her work at or above satisfactory levels at all times relevant.

9. The day that Plaintiff began working for Defendant, one of the Line Leads, a black, Haitian male known as "Hatcher" (legal name unknown, hereinafter, "Hatcher"), started making sexual comments and innuendos to and about Plaintiff.

10. Hatcher told others who worked at the plant that he "had dibs" on Plaintiff and falsely spread rumors to co-workers that he and Plaintiff were having sexual relations.

11. Hatcher talked about co-workers' sex lives as well, telling Plaintiff that when his face was red it was because seeing a certain co-worker made him "horny."

12. Hatcher also made false accusations of racism against Plaintiff, stating that she had racial biases because her boyfriend was white. Plaintiff is a black, African American female.

13. Throughout her employment, Plaintiff took time off to avoid having to work with Hatcher due to his pervasive and repeated sexual and racial harassment.

14. On or about December 5, 2021, Hatcher approached Plaintiff at work and invaded her personal space and attempted to intimidate her by choosing to stand within three feet of Plaintiff, turning towards her instead of facing his machine, and staring at Plaintiff for a prolonged period of time such that Plaintiff felt like he was undressing her with his eyes. Standing in this proximity, and facing Plaintiff was not necessary for Hatcher to perform his job, and was, in fact, unsafe to be facing away from the machine.

15. The only other black woman on Plaintiff's floor, Licana, observed the harassment and attempted to assist Plaintiff by placing herself between Plaintiff and Hatcher.

16. After Plaintiff returned from her lunch break, Hatcher resumed the same sexually harassing and intimidating behavior by standing too close to her.

17. Hatcher asked Plaintiff to pull up her mask, which she did. Nevertheless, Hatcher walked away from the line, to make a report to Shift Lead, Scott (last name unrecalled), to attempt to get Plaintiff in trouble in relation to the mask policy.

18. Approximately five minutes later, their Shift Lead, Scott arrived at Plaintiff's work station and asked, in words or substance, "Can you pull up your mask some more? I know it's hard to breathe over here but just a tiny bit more." Plaintiff immediately complied with the request. Hatcher was wearing a cloth mask in violation of Defendant policy, and Plaintiff had on an N95 mask. Scott did not order Hatcher to put on a mask that complied with company policy, or in any manner discipline him for violation of the policy.

19. At this point Plaintiff was near tears due to the intimidation and harassment by Hatcher, and asked Scott in word or substance, "Can you *please* move him? For hours he has had his body facing me, closer to me than he should be, just staring at me tapping his fingers trying to intimidate me. I already pulled up my mask."

20. Scott took no action other than to tell Hatcher, in words or substance, "You can't keep staring at her to intimidate her."

21. Hatcher pulled down his mask entirely. He said that Plaintiff's mask was not fully over her nose and that he had a newborn baby at home.

22. Scott responded that Hatcher was making Plaintiff uncomfortable and told Plaintiff, "Everybody just needs to get along."

23. Upon information and belief, Scott did not issue any discipline of Hatcher for his sexual harassment and intimidation of Plaintiff.

24. During the same shift, the co-worker who had attempted to assist her by interfering with Hatcher's harassment advised Plaintiff to report Hatcher's behavior, and Plaintiff ultimately agreed. Hatcher overheard the conversation and Plaintiff's statement of intention to file an HR complaint, and quickly left the line and did not return for the remainder of the shift.

25. Hatcher did not come back to the line. Later during a break, another employee asked Hatcher why he was not helping. Hatcher responded by loudly making a threat that Plaintiff overhead, stating that if he went back over there (referring to the workstation with Plaintiff) that he was going to "hurt someone."

26. Following the incident, Plaintiff and her co-worker, Licana, attempted to reach out to Human Resources ("HR") on numerous occasions to the point that Plaintiff clocked out and waited over half an hour for HR to come in. Since Plaintiff had to return to her shift, she left a message with Terra (last name unrecalled), whom Plaintiff's supervisor said was the HR assistant, and she asked to have HR reach out to her.

27. After Plaintiff's shift ended at approximately 7:00 a.m. on December 6, 2021, she again attempted to speak with HR regarding the harassment. As no one from HR was available

at that time, Plaintiff left a message for Terra to request that Terra respond to her so that she could make a complaint.

28. Subsequently Plaintiff was effectively disciplined and retaliated against for her attempts to make a complaint and to protect herself against her harasser, when her supervisors orders that she and Licana not be permitted to work together. Additionally, Defendant attempted to move Plaintiff's work assignment to the cartridge room, without her written consent.

29. When HR finally responded to Plaintiff, it was via Wendy (last name unrecalled, hereinafter, "Wendy") a Human Resources Representative.

30. Wendy and Plaintiff arranged a meeting for December 9, 2021, to discuss Plaintiff's harassment complaint but Wendy canceled the meeting via text message on December 9, 2021 at approximately 5:31 a.m.

31. In response, Plaintiff texted back later that afternoon, informing Wendy that her next work shift was that night or that she was next assigned to work December 14, 2021 to reschedule. Plaintiff asked if restrictions were still placed on her and Licana. Plaintiff wrote, "I was told that I can no longer work nor be around Licana on the floor and that they're moving my position to cartridge room. The man who has sexually harassed me since the day I started working at 3M continues to make the environment hostile."

32. Defendant's HR representative, Wendy, did not respond to Plaintiff.

33. Plaintiff was in fact moved to a different work location, and in her new spot, she would continually look up from her work and see Hatcher staring at her from across the way.

34. As Hatcher had learned that Plaintiff was planning to meet with HR and file a complaint against him, Hatcher attempted to pre-emptively discredit Plaintiff by falsely telling HR and co-workers that Plaintiff was spreading rumors about him, and falsely claiming that

Plaintiff had made inappropriate racial statements. Specifically, HR informed Plaintiff that Hatcher's complaint also alleged that Plaintiff said, "Blacks need to stay with Blacks." Plaintiff responded to HR that these allegations were false.

35. Eventually, in December 2021, Plaintiff was able to file a sexual harassment complaint against Hatcher with HR.

36. Nevertheless, she continued to hear reports concerning negative comments that Hatcher made about her.

37. Upon information and belief HR did not conduct a thorough investigation of her complaint and took no disciplinary action against Hatcher.

38. Defendant never communicated to Plaintiff the results of any investigation regarding her complaints against Hatcher.

39. In approximately the end of 2021, Hatcher was out of work for some time, but Plaintiff kept hearing that he was coming back.

40. In or about February of 2022, Plaintiff learned that she was pregnant.

41. Subsequently, in late February or early March Plaintiff learned that Hatcher was returning to work. As a result, of this knowledge and the knowledge that Defendant had taken no action to resolve her sexual harassment complaints or to shield or protect her from her harasser, Plaintiff's suffered severe anxiety and emotional distress, which exacerbated her pregnancy symptoms. Plaintiff sought and took leave as a result of these symptoms and emotional distress starting around March 4, 2022.

42. Plaintiff provided documentation for her need for leave, specifically FMLA paperwork, but Defendant did not accept it.

43. Plaintiff did not want to leave work so early in her pregnancy, but due to the stress and anxiety caused by the knowledge of Hatcher's return, Plaintiff felt that she had no choice but to leave.

44. Plaintiff was constructively discharged on April 8, 2022.

45. Throughout her employment with Defendant, Plaintiff was subjected to sexual harassment and a hostile work environment.

46. Plaintiff was also discriminated and/or retaliated against based on her sex, race, and color.

47. Any and all reasons Defendant has proffered for its adverse employment action against Plaintiff are false and/or pretext to mask its unlawful discriminatory intent.

**COUNT ONE:    SEX DISCRIMINATION – C.G.S. § 46a-60(b)(1)**

48. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

49. Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

50. Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on account of her sex.

51. Defendant subjected Plaintiff to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

52. Defendant subjected Plaintiff to adverse employment action, motivated by Plaintiff's sex.

53. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT TWO:   SEXUAL HARASSMENT – C.G.S. § 46a-60(b)(8)**

54. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

55. Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

56. Defendant subjected Plaintiff to sexual harassment in one or more of the following ways, in that:

   a. Plaintiff was subjected to unwelcome sexual advances or requests for sexual favors;

   b. Defendant subjected Plaintiff to unsolicited comments or conduct of a sexual nature;

   c. Plaintiff's submission to such conduct was made explicitly or implicitly a term or condition of Plaintiff's employment;

   d. Plaintiff's submission to or rejection of such conduct was used as the basis for Defendant's employment decisions concerning Plaintiff; and/or

   e. Such conduct had the purpose or effect of substantially interfering with Plaintiff's work performance and/or created an intimidating, hostile, or offensive working environment.

57. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment

into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT THREE:    RACE DISCRIMINATION – C.G.S. § 46a-60(b)(1)**

58. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

59. Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

60. Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on account of race.

61. Defendant subjected Plaintiff to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

62. Defendant subjected Plaintiff to adverse employment action, motivated by Plaintiff's race.

63. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT FOUR:    COLOR DISCRIMINATION – C.G.S. § 46a-60(b)(1)**

64. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

65. Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

66. Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on account of color.

67. Defendant subjected Plaintiff to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

68. Defendant subjected Plaintiff to adverse employment action, motivated by Plaintiff's color.

69. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT FIVE:      RETALIATION IN VIOLATION OF C.G.S. § 46a-60(b)(4)**

70. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

71. Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

72. Plaintiff engaged in protected activity by opposing Defendant's discriminatory employment practices.

73. Defendant subjected Plaintiff to adverse employment action, motivated by Plaintiff having engaged in such protected activity.

74. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment

into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for the following relief:**

1. Money damages;

2. Reinstatement, or in lieu thereof, front pay;

3. Punitive damages;

4. Attorneys' fees and costs of this Action; and

5. All other awardable relief.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

                                    THE PLAINTIFF,
                                    CATHERINE GRAY

BY:   */s/ Rebecca M. Harris*
         Rebecca M. Harris, Esq. (CT26669)
         Cicchiello & Cicchiello, LLP
         364 Franklin Avenue
         Hartford, CT 06114
         Phone: 860-296-3457
         Fax: 860-296-0676
         Email: rharris@cicchielloesq.com

# EXHIBIT 1

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Catherine Gray**
**COMPLAINANT**

vs.

CHRO No. 2340151
EEOC No. 16A202300145

**Minnesota Mining and Manufacturing Company aka 3M Compan**
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

_Tanya A. Hughes_

**DATE:** May 4, 2023         Tanya A. Hughes, Executive Director

cc:
  Complainant's Attorney: Rebecca Harris, Esq.
    Cicchiello & Cicchiello
    rharris@cicchielloesq.com

  Respondent's Atty.:  Matthew Beckwith, Esq.
    Littler Mendelson PC
    mbeckwith@littler.com

  Case File

.