UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
--------------------------------------------------------  x
CATHERINE GRAY,                                           :
                                                          :
                               Plaintiff,                 :
                                                          :          **MEMORANDUM &**
            -against-                                     :          **ORDER GRANTING**
                                                          :          **DEFENDANT'S MOTION**
MINNESOTA MINING AND MANUFACTURING:                       :          **TO DISMISS**
COMPANY,                                                  :
                                                          :          3:23-CV-01069 (VDO)
                               Defendant.                 :
--------------------------------------------------------  x
```

**VERNON D. OLIVER**, United States District Judge:

The plaintiff Catherine Gray has brought this action alleging that the defendant Minnesota Mining and Manufacturing Company ("Defendant" or "3M") retaliated and discriminated against her on the basis of her sex, race, and color and subjected to her a hostile work environment in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. Defendant seeks dismissal of Counts One, Three, Four, and Five of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff did not suffer an adverse employment action and failed to allege sufficiently severe or pervasive conduct to establish a hostile work environment claim.

For the reasons discussed below, 3M's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of deciding Defendant's motion. Plaintiff is a Black female. (Am. Compl., ECF No. 19, ¶ 12.) Plaintiff alleges that she was employed by Defendant as a line processor starting in July or August 2021. (*Id.* ¶ 7.) On the day Plaintiff started work, one of the Line Leads, a Black male known as "Hatcher," started making sexual comments and innuendos to and about

Plaintiff. (*Id.* ¶ 9.) Plaintiff further alleges that Hatcher falsely told their co-workers that he and Plaintiff were having sexual relations and that Plaintiff had racial biases because her boyfriend was white. (*Id.* ¶¶ 10, 12.) Hatcher also told Plaintiff that when his face was red it was because seeing a certain co-worker made him "horny." (*Id.* ¶ 11.) Plaintiff claims that she took time off work throughout her employment with Defendant to avoid working with Hatcher due to his pervasive and repeated sexual and racial harassment. (*Id.* ¶ 13.)

On or about December 5, 2021, Hatcher approached Plaintiff and attempted to intimidate her by standing close to her and staring at her for a prolonged period of time such that Plaintiff felt like Hatcher was undressing her with his eyes. (*Id.* ¶ 14.) Plaintiff's co-worker Licana, another Black female, noticed this and attempted to assist Plaintiff by placing herself between Plaintiff and Hatcher. (*Id.* ¶ 15.)

Later that day, Hatcher asked Plaintiff to pull up her face mask, which she did. (*Id.* ¶ 17.) Hatcher nevertheless reported her to the Shift Lead for violating Defendant's mask policy. (*Id.*) The Shift Lead also requested Plaintiff to pull up her mask, but did not say anything to Hatcher, who was wearing a cloth mask in violation of the mask policy. (*Id.* ¶ 18.) In response, Plaintiff requested that the Shift Lead move Hatcher because he had been standing close to her and intimidating her. (*Id.* ¶ 19.) The Shift Lead took no disciplinary action other than to tell Hatcher, "You can't keep staring at her to intimidate her." (*Id.* ¶ 20.)

During the same shift, Licana advised Plaintiff to report Hatcher to human resources ("HR"), and Plaintiff agreed. (*Id.* ¶ 24.) Overhearing the conversation, Hatcher left the line and did not return for the remainder of the shift. (*Id.*) Later during a break, another employee asked Hatcher why he was not working. (*Id.* ¶ 25.) Plaintiff overheard him say that if he went back

to his workstation, he was going to "hurt someone." (*Id.*) Following this, Plaintiff left a message with Terra, the HR assistant, and asked to have HR reach out to her. (*Id.* ¶ 26.)

On December 6, 2021, after her shift ended, Plaintiff again reached out to Terra requesting that Terra respond so that Plaintiff could file a complaint. (*Id.* ¶ 27.) Wendy, a HR representative, ultimately responded and arranged for a meeting to discuss Plaintiff's complaint on December 9, 2021. (*Id.* ¶ 30.) Meanwhile, Plaintiff's supervisors ordered that she and Licana were not permitted to work together and attempted to move Plaintiff's work assignment to the cartridge room. (*Id.* ¶ 28.)

Wendy texted Plaintiff to cancel the meeting the morning of December 9, 2021. (*Id.* ¶ 30.) Plaintiff asked to reschedule the meeting in response, and inquired whether restrictions were still placed on her and Licana. (*Id.* ¶ 31.) Wendy did not respond. (*Id.* ¶ 32.)

Plaintiff was moved to a different work location. (*Id.* ¶ 33.) Hatcher learned that Plaintiff was planning to meet with HR and told HR and his co-workers that Plaintiff was spreading rumors about him and making inappropriate racial statements. (*Id.* ¶ 34.) Eventually, Plaintiff filed a sexual harassment complaint with HR against Hatcher later in December 2021. (*Id.* ¶ 35.) HR did not thoroughly investigate Plaintiff's complaint or take disciplinary action against Hatcher. (*Id.* ¶ 37.)

Hatcher did not report to work staring at the end of 2021 (*id.* ¶ 39), but in February or March 2022, Plaintiff learned that Hatcher would be returning to work. (*Id.* ¶ 41.) Hearing the news of Hatcher's return exacerbated Plaintiff's pregnancy symptoms, causing Plaintiff to take leave starting around March 4, 2022. (*Id.*) Defendant rejected her request for FMLA leave, but Plaintiff felt as though she had no choice but to leave due to the stress and anxiety caused by

the knowledge of Hatcher's return. (*Id.* ¶¶ 42, 43.) Plaintiff alleges she was constructively discharged on April 8, 2022. (*Id.* ¶ 44.)

Plaintiff raises five causes of action under the CFEPA against Defendant—(1) sex discrimination, (2) sexual harassment, (3) race discrimination, (4) color discrimination, and (5) retaliation—and seeks money damages, reinstatement or front pay, punitive damages, and attorneys' fees. (*Id.* ¶¶ 50, 51, 56, 60, 61, 66, 67, 72, 73, Prayer for Relief.) Plaintiff's sexual harassment claim is not the subject of the instant motion.

## II.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41, 41 (2d Cir. 2017) (quoting *Ashcroft*, 556 U.S. at 678).

In deciding a motion to dismiss, the Court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). The Court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal quotation marks omitted).

III.   **DISCUSSION**

3M moves to dismiss Counts One, Three, Four, and Five of the Amended Complaint under Rule 12(b)(6) for failure to state a claim. The Court grants Defendant's motion in its entirety.

### A.    Counts One, Three, and Four: Violation of C.G.S. § 46a-60(b)(1)

Because the Amended Complaint arguably pleads claims for both disparate treatment and hostile work environment, the Court will analyze these claims separately below.

#### 1.    Disparate Treatment

The standard governing discrimination under the CFEPA is the same as that governing Title VII. *See Craine v. Trinity Coll.*, 791 A.2d 518, 531 n.6 (Conn. 2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."); *State v. Comm'n on Hum. Rts. & Opportunities*, 559 A.2d 1120, 1124 (Conn. 1989) (The intent of the Connecticut legislature in adopting the CFEPA was to make the statute coextensive with Title VII; therefore, Connecticut courts look to federal case law for guidance in interpreting that provision of the CFEPA). Under Title VII, Plaintiff's claims of discriminatory treatment are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The *McDonnell Douglas* standard requires that Plaintiff establish a *prima facie* case of discrimination by showing that: (1) she is part of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination. *Id.*

Defendant argues that Plaintiff's disparate treatment claims fail because she did not suffer an adverse employment action in satisfaction of the third element of the *prima facie*

case. (Def. Mem., ECF No. 24-1, at 5–11.) "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). The Second Circuit has held that, for conduct to constitute an adverse employment action, it must be a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d. Cir. 2015) (internal quotation marks omitted).

Plaintiff fails to allege a materially adverse change in her employment. She does not allege a termination or a demotion, reduction in pay or position, or a loss of material benefits or responsibilities. Rather, Plaintiff alleges that she was moved to a different work location and that she was no permitted to work with her friend/co-worker. (Am. Compl. ¶¶ 28, 33.) A "pure lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Adeniji v. Admin. for Child. Servs., N.Y.C.*, 43 F. Supp. 2d 407, 426 (S.D.N.Y. 1999) (internal citations omitted). "[T]he mere fact that an employee has been transferred or that h[er] job responsibilities have changed is not in itself sufficient to show an adverse change in working conditions." *Cooper v. New York State Dep't of Hum. Rts.*, 986 F. Supp. 825, 828 (S.D.N.Y. 1997) (collecting cases). Therefore, the fact that Plaintiff was moved to the cartridge room, without more, does not constitute an adverse employment action.

Furthermore, Plaintiff alleges that she was "constructively discharged on April 8, 2022." (Am. Compl. ¶ 44.) "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Conn. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). "To find that an employee's resignation amounted to a constructive discharge, 'the trier of fact must be satisfied that the . . . working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000) (internal citation and quotation marks omitted).

Although an adverse employment action for a disparate treatment claim may be premised upon a constructive discharge, *Pa. State Police v. Suders*, 542 U.S. 129, 142 (2004), Plaintiff has not plausibly alleged that she was constructively discharged under the *Iqbal* pleading requirements. Plaintiff does not allege that Defendant *intentionally* created an intolerable work atmosphere; rather, it was Plaintiff's own subjective feeling about Hatcher's return that led her to quit her employment. *See* Am. Compl. ¶ 43 ("[D[ue] to the stress and anxiety caused by the knowledge of Hatcher's return, Plaintiff felt that she had no choice but to leave."). Given that there was no (pled) action here on the part of 3M and that a factfinder could not find that the working conditions were so difficult or unpleasant such that a reasonable person in Plaintiff's shoes would have felt compelled to resign, especially since the person allegedly causing the unpleasant conditions (Hatcher) was not even working at 3M at the time of Plaintiff's resignation, Plaintiff cannot establish that she was constructively discharged. Even if Plaintiff could establish that she was constructively discharged, she fails to allege how the constructive discharge occurred under circumstances giving rise to an inference of

discrimination based on her membership in the protected classes of sex, race, and/or color. *See Zephyr v. Ortho McNeil Pharm.*, 62 F. Supp. 2d 599, 608 (D. Conn. 1999).

Accordingly, the Court determines that Plaintiff did not suffer an adverse employment action to establish a *prima facie* case for any disparate treatment claims.[1]

## 2. Hostile Work Environment

Plaintiff's hostile work environment claims also fail. As with CFEPA discrimination claims, Connecticut courts look to federal law for guidance when analyzing CFEPA hostile work environment claims. "To establish a claim of hostile work environment, the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Brittell v. Dep't of Corr.*, 717 A.2d 1254, 1265 (Conn. 1998) (internal citation and quotation marks omitted). Courts must examine "all the circumstances" in determining whether an environment is "hostile" or "abusive," including the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). To prevail on a hostile work environment claim, a plaintiff who is harassed by a co-

---

[1] The Court notes further that Plaintiff does not specifically allege how she was treated differently than those outside of the protected classes to establish disparate treatment claims. *See Blige v. City Univ. of N.Y.*, No. 1:15-CV-8873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.*, who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiffs' or how they were treated differently by defendants.") (internal citations, quotation marks, and alterations omitted), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017).

worker must show both (1) a hostile work environment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 715 (2d Cir. 1996) (internal citation omitted).

The conduct Plaintiff complains of consists of four events in the span of approximately five months: (1) on the day Plaintiff started working at 3M (or on some later unspecified date), Hatcher told co-workers that he had "dibs" on and sexual relations with Plaintiff (Am. Compl. ¶ 10); (2) on some unspecified date, Hatcher falsely accused Plaintiff of racism, stating she had racial biases because her boyfriend was white (*id.* ¶ 12); (3) on December 5, 2021, Hatcher turned to face Plaintiff and stared at her for a prolonged period of time and reported her to the Shift Lead for violating Defendant's mask policy (*id.* ¶¶ 14, 17); and (4) after Plaintiff reported Hatcher to HR in December 2021, HR allegedly told Plaintiff that Hatcher claimed Plaintiff said, "Blacks need to stay with Blacks." (*Id.* ¶ 34.)

The Court finds that these comments and incidents were isolated and episodic in nature, and do not meet the "high" standard to sustain a hostile work environment claim. *Terry*, 336 F.3d at 148; *see also Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 103–04 (2d Cir. 2020) (affirming summary judgment of no hostile work environment claim where a coworker stared at a plaintiff while licking a lollipop to simulate fellatio: "Although offensive and inappropriate, Ureña's alleged act of suggestively licking a lollipop is not in the category of 'extraordinarily severe' single actions that create a hostile work environment."). Specifically, Plaintiff fails to allege how Hatcher's alleged statement about her boyfriend and the statement that "Blacks need to stay with Blacks" contributed to a hostile work environment, or that he made such statements due to her race or color. Likewise, relying on the same facts for her hostile work environment claims as those articulated for her disparate treatment claims, none

9

of Plaintiff's allegations plausibly suggest that the conduct complained of occurred because of her sex. In order to sufficiently plead a hostile work environment, Plaintiff must link the harassment to her claim of sex discrimination. *See Brown v. Henderson,* 257 F.3d 246, 252 (2d. Cir. 2001) ("It is axiomatic that mistreatment at work . . . through subjection to a hostile environment . . . is actionable . . . only when it occurs because of an employee's sex, or other protected characteristic."); *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class."); *DelaPaz v. N.Y. City Police Dep't*, No. 01-CV-5416, 2003 WL 21878780, at *3 (S.D.N.Y. Aug. 8, 2003) (the law "prohibits only discrimination on the basis of [protected classes], not general surliness or arbitrary pettiness"). Thus, any claim for hostile work environment must fail.

Even if Plaintiff has established the existence of a hostile workplace, she fails to allege how Hatcher's words and actions can be imputed to Defendant. "Once a plaintiff has established the existence of a hostile workplace, she must then demonstrate that the harassing conduct which created the hostile situation should be imputed to the employer." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998) (internal quotation marks omitted); *see also Olaya v. Beacon Cmty Corp.*, No. 22-CV-882 (VDO), at *8 (D. Conn. Feb. 12, 2024). "Where, as here, harassment is perpetrated by a plaintiff's co-worker, an employer will be held liable if the plaintiff demonstrates that the employer either (1) provided no reasonable avenue for complaint, or (2) knew (or reasonably should have known) about the harassment but failed to take appropriate remediable action." *Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *9 (D. Conn. Dec. 4, 2015).

As to the first prong, Plaintiff does not allege that Defendant provided no reasonable avenue to complain about Hatcher's behavior. While Plaintiff alleges that Defendant did not investigate her HR complaint against Hatcher or take disciplinary action against him, Hatcher left work for an extended period of time shortly after her complaint was made. (Am. Compl. ¶¶ 35, 37, 39.) Therefore, even if it could be reasonably inferred that 3M's response to Plaintiff's HR complaint to be inadequate, Plaintiff does not allege that the harassing behavior continued after Hatcher left 3M.[2] As such, the Court concludes that Defendant did not create nor perpetuate any hostile work environment, as there was no hostile work environment shortly after Plaintiff filed her complaint with HR. *See Crawford*, 2015 WL 8023680, at *9.

Accordingly, Plaintiff's hostile work environment has not been plausibly alleged, and Counts One, Three, and Four are dismissed.

### B.      Count Five: Violation of C.G.S. § 46a-60(b)(4)

Plaintiff has asserted a claim of retaliation in violation of the CFEPA. (Am. Compl. ¶¶ 70–74.) "The elements of a claim of retaliation under § 46a–60(a)(4) are the same as for a retaliation claim under Title VII." *Miller v. Edward Jones & Co.*, 355 F. Supp. 2d 629, 642 (D. Conn. 2005). "In order to establish a *prima facie* case of retaliation, a plaintiff must show that: [1] [s]he engaged in protected participation or opposition under Title VII [or CFEPA], . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment

---

[2] And Plaintiff concedes that Defendant did take some action when she previously complained about Hatcher: When she told the Shift Lead that Hatcher was staring at her and making her uncomfortable, the Shift Leader told him to stop. (*Id.* ¶¶ 19, 20.)

action." *Byra–Grzegorczyk v. Bristol–Myers Squibb Co.*, 572 F. Supp. 2d 233, 248 (D. Conn. 2008) (internal quotation marks omitted).

As discussed above, Plaintiff has not sufficiently pled that she suffered an adverse employment action. Even under the more relaxed standard for "adverse employment action" in Title VII retaliation cases, which focuses on whether the action taken by the employer is "materially adverse," meaning, "harmful to the point that [the action] could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010), Plaintiff fails to make out a case for retaliation. The only specific factual allegation of a retaliatory action is Plaintiff's allegation that she was moved to a different work location and that she was no permitted to work with her friend/co-worker. (Am. Compl. ¶¶ 28, 33.) Plaintiff does not plead any circumstances that made the location change especially onerous to her, and her remaining allegations of retaliatory actions are conclusory. "It is not plausible that any of these actions would dissuade a reasonable employee from opposing discriminatory practices or making a charge of discrimination." *John v. Walmart Store No. 2585*, No. 3:21-CV-1285 (MPS), 2023 WL 2346577, at *8 (D. Conn. Mar. 3, 2023).

Because Plaintiff has failed to establish the third prong of her CFEPA retaliation claim, Count Five of the Amended Complaint is dismissed.[3]

---

[3] The Court also finds that even if the adverse employment action was the alleged constructive discharge, the fourth element of the CFEPA retaliation claim would not be met as Plaintiff fails to establish the causal connection between filing her complaint with HR and the constructive discharge, which happened four months after the complaint was filed.

**IV.** <u>**CONCLUSION**</u>

For the reasons described above, 3M's motion to dismiss (ECF No. 24) is **GRANTED**.

Counts One, Three, Four, and Five are **dismissed with prejudice**. Defendant shall file an

answer as to Count Two of the Amended Complaint within **fourteen (14) days** of this Order.

**SO ORDERED.**

Hartford, Connecticut
April 30, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge